Good morning, Your Honors. May it please the Court, Amelia Bauer on behalf of Appellant James Mikuta, I would like to reserve three minutes of my time for rebuttal, please. Very well. I'd like to start this morning, Your Honors, with discussing abstention and the Colorado River Doctrine. As this Court is well aware, there are eight elements that support or oppose abstention. I believe that Mr. Mikuta met the majority of those elements, and the trial court here should have abstained in favor of the state court proceedings. That's your best argument? I'm sorry? That's your best argument, abstention? I think it's an important argument, Your Honor, because we have competing issues here, one of which is whether there was concurrent jurisdiction, and the other is whether there is exclusive jurisdiction in the state court. If you are correct about, I mean, if abstention, you say the court should have, by what standard of review do we consider that? Well, I think the standard of review on the issue of abstention is clear error. I don't know that the trial court fully analyzed all the factors. In fact, the trial court determined... And you acknowledge there's a presumption against abstention? I think that's correct in the overwhelming jurisprudence on this issue. However, the underlying record in the trial court leads me to the conclusion that abstention wasn't fully considered, and the court misconstrued Mr. Makuta's arguments below with regard to abstention. So... The action was filed in the district court first. That's correct, Your Honor. And the opposition, your opposition was filed for some reason in state court rather than federal court. That's correct, Your Honor. Isn't that a strategic choice that your client takes the consequences of? Yes. But it is also a legal issue, because if we jump past abstention to the issue of exclusive jurisdiction, this employment contract said that the issues between these parties would be decided under state law. Where did it? Does it really? Yes. Where do you say that language appears? Article 18 of the employment contract says that the law to be governed in the proceedings is Ohio law. Oh. Yeah. You say that it would be exclusive jurisdiction in the Ohio state court, so did it? Well, I think I disagree with that, Judge Norris, because the contract says that the matter, if there's a dispute, should be decided in Dayton, Ohio. Well, it was. Well, yes. I mean, we concede the arbitration was in Westchester, which isn't in Dayton, but the parties agreed, so that's a non-issue. Then we get to the issue of state court jurisdiction by agreement of the parties and the difference between the Federal Arbitration Act and the Ohio Act. The Federal Arbitration Act does not contain a provision that's in the Ohio Act, which is 2711.16 of the Ohio Revised Code, which says if the parties basically confer jurisdiction on a court of common pleas in the state of Ohio, they have... I mean, really, the arbitration clause, number 9, this is where I'm having trouble with your argument. The arbitration clause finishes with the phrase, judgment may be entered in any court having jurisdiction thereof, and the federal court had jurisdiction. Unless you want to go back to citizenship or diversity of citizenship. Well, and I think diversity is another issue that I would... But, I mean, let's stick with this little clause right here. All right. I think the problem is the ambiguity in the document. I don't necessarily agree that it's that clear. It says the court of competent jurisdiction, but this case can be cited, must be decided under state law, then don't we have a struggle with the Federal Arbitration Act and the Ohio Arbitration Act, which again triggers Revised Code Section 2711.16, which says if the parties... A jurisdiction should be had in the common pleas court of the county in the state where the parties agree. The Federal Arbitration Act doesn't have a similar provision, but Section 9 of the U.S. Code says that if the parties do not agree, the Federal Arbitration Act doesn't necessarily automatically... Where does the agreement have to come from? Because in your situation, I take it that everybody... All the terms of the agreement between Reynolds and your client occurred in that non-compete agreement. That is correct. That is where we find the arbitration clause, the agreement to arbitrate, and the terms that limit or don't limit within that clause number nine. I agree with that. The only thing I'd note about that is, again, not untypical of employment agreements and non-competes. This was a basically take-it-or-leave-it agreement. And I think the burden on the clarity of the language, therefore, falls with Reynolds and not with Mr. Makuta. It's his interpretation of that agreement that he had a right to file in state court because of the Ohio Arbitration Act and that because substantive law, Ohio law applied. Let me talk for a little bit, before I go back to abstention, on the diversity question. The only way that we get into federal court is if we have diversity of citizenship and meet the monetary limitation. There's no question that there was diversity of citizenship, although Mr. Makuta did agree to come into Ohio for arbitration. That was a term of the contract, and I don't think he could object to that. However, diversity in this case was based on the complaint that Reynolds filed in the arbitration, upon which they proceeded to lose, and the arbitrator found not only were they not damaged, but they weren't damaged as a result of anything that Mr. Makuta did. In other words, the arbitrator said there's no causation between their claim of damages and Mr. Makuta's having left their employee. So then Reynolds turns around and runs into federal court. Payment of damages, that's somewhat distinct from what I think you're about to argue. The court said you don't have to write a check, that Makuta does not have to write a check, but the court, I think, acknowledged that there was a damage. By preventing him from calling upon those customers that he took from the, or had from the other business. The arbitrator found that Mr. Makuta violated the non-compete and non-solicitation agreements, but the arbitrator specifically found that Reynolds hadn't been damaged by any of that. And so, to turn around and run into federal court and say, your honor, well, we have diversity jurisdiction on an issue that we lost on in the underlying action, when we're asking the seems to me to be in a posit. I think the reality of it is, if there was a measure of damage under the arbitration award, it would have been Mr. Makuta's, the impact of the injunction on Mr. Makuta. But it's not Mr. Makuta's burden to prove diversity, and there was no evidence presented either at the arbitration or to the federal court as to the economic impact on the injunctive relief provided to Reynolds in the arbitration. So it's our view that there really never was diversity, and therefore, if there wasn't diversity, we don't ever get to abstention. So let me, if I may, go back to the issue of abstention, because I think the factors there tie into the rest of the discussion we're having. First of all, you know, the first question is, did the state court assume jurisdiction over property? And the short answer to that question is no. But Reynolds proceeded to file a counterclaim for attorney's fees in the state action, which says to me that they thought the state court had some jurisdiction to do something. So under this court's decision in Payne-Webber v. Cohen, I would say that factor for abstention is either neutral or favorable to Mr. Makuta. The second issue is the question of piecemeal litigation, which this court said in Cohen really is not a negative thing. And the reality of it is, the federal court, if it had jurisdiction to confirm, had jurisdiction to confirm. The state court would then have jurisdiction to review and modify. These are parallel actions. There was not a risk of piecemeal results or different results between the two courts on that issue. The order in which jurisdiction was obtained, of course, this court in Cohen said that doesn't matter. It's what is the progress of the litigation. And as we know, Reynolds came into federal court first and wanted to speed through confirmation before Mr. Makuta had his three-month right to oppose it. He chose to file in state court rather than federal court. But he had that right in federal court had he done it. And it would not have changed the speediness of the proceedings if he filed in federal court. The court would still have the same obligation of review that the state court had. And as we pointed out in our briefing, the state court immediately took this matter up when it was filed. And we asked the federal court to stay proceedings in favor of the state court. So there's nothing to say that the federal court would have acted faster than the state court, given the fact that Mr. Makuta did exercise his right to seek to modify or confirm. We've discussed the issue of governing law. The trial court found that the Federal Arbitration Act applied. I struggle with that because of the terms of their own agreement. I think the Ohio Act applied procedurally and also Ohio substantive law applied. So I think unlike in Cohen where we were dealing with a governmental, a congressional action, state law was at issue here. And so there's no benefit necessarily to being in the federal court. Finally, on the issue of the progress of the case and whether Reynolds could be protected in state court, there's no evidence that Reynolds would have suffered any harm being in state court. And therefore, I think the factors overwhelmingly favor Mr. Makuta on the issue of abstention. I'll reserve the rest of my time for rebuttal. Thank you very much. Thank you. May it please the court. I'm John Allen and I represent Reynolds. There are essentially two issues on this appeal. Number one, whether or not the trial court had jurisdiction. And number two, whether or not the trial court should have exercised its jurisdiction or abstained. The first issue is that I believe the trial court plainly had jurisdiction based upon diversity of citizenship. I take it counsel's argument, Ms. Bower, argues that the federal court had some jurisdiction and the state court had some because of some peculiarities of Ohio law under the Ohio revised code. Did you, you heard that argument, did you not? What do you say to that? There's two answers to that. Number one, when we filed this petition to confirm the award, there was no pending state court action and there was not any pending state court action. Right, but there was, but it was filed then. Ultimately, it was. And I believe that that the state court may have jurisdiction, Your Honor. You'll remember that Judge Rose looked at the question about whether or not the state court jurisdiction was really invoked with the filing and he concluded that he couldn't tell. But he went on to say... It was filed in state court too. Pardon me, ma'am. It tells us that Reynolds sought attorney's fees in state court invoking that jurisdiction. Well, I would respectfully say that we didn't invoke that jurisdiction, but in the event... Well, did you file there? I'm sorry. We filed a counterclaim, yes, ma'am. But in the event that that court did not have jurisdiction, I mean, that was basically a safety valve, Judge. If we were going to have to litigate any issue in state court, we were seeking our attorney's fees because we didn't think it was properly filed. We thought, frankly, that it was frivolous. Should this court view that as some acquiescence? In the jurisdiction in state court? Did the state court proceeding defer to them, Judge? No, I'd say not. And I would say, you know, what we have here really is the benefit of the state court decision. As you know, there were a number of pleadings filed by both parties. And ultimately, the state court decided that case. And that decision is attached to my response to Mr. Makuda's motion for reconsideration in this case. And the state court, Judge Adkins, specifically said that with respect to plaintiff's assertion that the employment agreement specifically designated exclusive jurisdiction to Ohio courts of common pleas, the court finds that this is not persuasive. Upon review of the employment agreement, the court finds that the clause at issue states that the arbitration shall take place in Dayton, Ohio, and quote, quoting from the employment agreement, Your Honor, judgment upon the award rendered may be entered in any court having jurisdiction thereof. Based upon the plain language of the employment agreement, it is apparent to the court that the parties did not intend to limit jurisdiction over the arbitration award solely to this court. This employment agreement unambiguously allows the issue of judgment to be raised in any court having jurisdiction. And it has been established that the district court has concurrent jurisdiction over the case at issue with this court. What's the bottom line from that court? Dismissal? It granted our pending motion to stay, pending the federal court's determination of the merits. It stayed the action. Did anything happen to wrap it up? They filed a motion to be clear on that. They filed a motion for reconsideration, and the judge also decided that issue and refused to reconsider it and essentially reiterated the point of view that I just the district court confirmed that it had jurisdiction based upon diversity of citizenship and that it, in fact, had the we had filed there first and said that he will defer to the federal district judge to decide the issue on the merits. So to come back to the jurisdictional argument very quickly, to be sure that this is clear, is that Reynolds is a corporation incorporated under the laws of Ohio and maintains its principal place of business in Ohio. It's a citizen of Ohio. Mr. Makuta is a citizen of Illinois. There is diverse citizenship. We made the allegation in our complaint that the jurisdictional, that the matter was worth more than $60,000. Now, based on those allegations, it- Counsel argues that in as much as the arbitrator found no right to damages, that undermines your amount in controversy. Well, judge, there's two different analysis on two different issues. Number one, the arbitrator looked at the damages issues and concluded that we hadn't established the proximate cause of those damages. Now, frankly, I thought I had, but that was his opinion. And for whatever reason, and it could have been the hardship on the employee, he did not award damages. But what the arbitrator did do, as arbitrators frequently do, is he fashioned the remedy based upon the facts of this case. And he concluded that Mr. Makuta should be enjoined from soliciting and contacting and doing business with Reynolds customers that he contacted while he was an employee of Reynolds. He was targeting our customers. The only customers that he had, that Mr. Makuta had a year and a half after he had started to work for our competitor, were our customers. And in fact, what he did is he looked at his very best customers and targeted them first as to generate the revenues for himself. And what we did on the jurisdictional issue is we supplemented our jurisdictional allegations with the declaration of Mr. Habner. Mr. Habner was the senior marketing director for Reynolds. Mr. Habner, as I'm sure the court knows, when you're looking at the value of the litigation, you look at the object of the litigation. And in this case, the object of the litigation is the injunction. And you try to place some value on that object of the litigation. The cases say, in fact, there's a 2005 case in the Northern District of Ohio, the non-compete agreement. You look at the revenues generated by the employee for the company by the former employer immediately preceding his termination, or you can look at the lost profits sustained by the employer. So what Mr. Habner did is in his affidavit, he covered both aspects of that. First, he looked at Mr. Makuta's employment history for five years, as it relates to immediately before his termination, and he calculated the revenues that Mr. Makuta earned on behalf of the company for each of those five years before his termination. For those five years, Mr. Makuta exceeded generating over $800,000 a year, with the exception of one year, and it was like $730,000. Well over $800,000 for the five years preceding his termination. But then Mr. Habner went on to say, let's look at what damages we've sustained since. So he looked at the 16 months following the revenues from these customers, following Mr. Makuta's termination, and concluded that Reynolds had sustained taking the revenues less the avoidable costs. The actual legitimate damages measure, and that measure came out to specifically $561,643. Whatever happened about attorney's fees here? The arbitrator in the arbitration proceeding, Your Honor, denied any relief  and thereafter, of course, when we went to court, that really never came up as an issue. In the state court? Or, well, we filed a counterclaim in the state court, but it never came up in the federal court. So fees went away? Yes, ma'am, essentially. Yes, ma'am. That's correct. But the bottom line to this is, and frankly, I'm not even sure that I really Well, let me phrase it this way. Mr. Makuta never even addresses Mr. Havner's declaration. They don't even act like that exists. And that declaration, I would respectfully submit, establishes conclusively that the amount in controversy exceeds $75,000. Yeah, your brief makes that very clear. But I just raised the point because counsel makes that point, that you didn't get your damages. So you've answered that. Well, I didn't get the damages, but I got the irreparable injunctive relief. And then when they say, when they claim The value thereof. Yes, ma'am. And when they say that, you know, we rushed to judgment, you know, pushed this proceeding along, we got the injunction. He was actively soliciting our customers. We knew that. So we didn't, we were concerned that he wouldn't abide by the injunction unless we got it confirmed to a judgment. So that's what we did. That's exactly why we went ahead and filed the case. And that's what the law provides. It says we can do that any time within a year. And we got after it. So to turn to the second issue, the abstention issue. First of all, Judge Rose specifically addressed all eight of the factors that relate to whether the court should abstain or not. And Judge Rose found that we satisfied seven of the eight of those factors. The only one that he hesitated about was the piecemeal litigation. But having made those fact findings, I would respectfully submit that those findings are subject to the abuse of discretion standard. And Judge Rose did not abuse his discretion. Helga argues for the clear error standard. I think in my questioning, she responded that it was clear error. Judge, I think that the standard is either abuse of discretion, and there's a couple of cases that say de novo review, but I don't think, I think that's really going to be the standard. And I think he satisfies that standard. And if it's clear error, I think that's even a harder standard for her. So we all know that the federal district judge has the obligation to exercise his jurisdiction. He has, in the language of the cases, the unflagging obligation to accept that jurisdiction. But he looked at the cholera, you know, out of an abundance of completeness and fairness. He looked at the factors one by one that are set forth in the Colorado River case and its progeny and found that, number one, there is no property or rez to attach to. It weighs in favor of exercising jurisdiction. Number two, the federal form is not less convenient. As we say in our brief, they're right across the street from one another. They're 72 feet apart. That waiver weighs in favor of exercising jurisdiction. Can someone measure that? Yes, ma'am. We measured it. And that waiver weighs in favor of jurisdiction. Number three, the avoidance of piecemeal litigation. As I mentioned earlier, when we filed the suit, it wasn't piecemeal. It was in federal court. They waited until the last second to file their motion to vacate. On the edge of their time expiring, they splintered the case. They filed a new case. They filed in a separate court. I submit that it was for the purposes of delay. Their allegations in that complaint alleged that the arbitrator was biased, that he exceeded his authority. Those allegations, I think, are intended for no other purpose than delay. We had a transcript of this proceeding, and Mr. Makuta didn't even attach it to the trial court. Because if you looked at the transcript for the four days of the proceeding, you would have seen that Mr. Skidmore was perfectly fair. Number four, the order of jurisdiction. We filed first. That's clear. Number five, the source of governing law, whether it's state or federal. I would submit that the Federal Arbitration Act applies. It's going to apply as well in state court. We availed ourselves of the Federal Arbitration Act and not any state court act like the Vulcan case. There, they moved to compel arbitration under state law. When they went to arbitration, the state court stayed the proceedings. When they got an award, they went back to state court and asked for a confirmation of the award. In fact, the California state judge went so far as to confirm the award. All of that took- I want to wrap up. We have to stop. Sorry, Judge. Judge Rose finds all seven factors, seven of the eight, in favor of not abstaining. And we have his decision. Yes, ma'am. Thank you. To wrap up, on the issue of attorney's fees, Judge Cook, the counterclaim is still pending in state court. And the state court judge has held that proceeding. It's not been dismissed. So I think the issue- That could be as simply explained as oversight, that it's just lost in the ether. Well, the court actually put an order on, I believe it's in the order that Mr. Allen had sent, they were reserving hearing on the attorney's fees issue on the counterclaim. So I think the reality- Were you going to press that and get back into court and find out whether you owe attorney's fees? Well, I guess I'm taking Mr. Allen at his word that it was a kind of a one-off and they only did it to protect themselves and it wasn't seriously intended as a claim for a remedy. Right. So you aren't going to press that, I take it? Well, yes. In our view, the case should have been litigated in state court. And I actually don't understand why we can't- Okay, but the argument you're going to pose now is if you succeed in this court, what might happen in state court? Well, in state court, the action to modify or vacate is a very simple issue. And then we would have to defend the attorney's fees provision if it's not withdrawn. Don't- You know, the motion to modify or vacate is not an appellate review. So it's not a- In my view, it's not difficult. And I also wanted to note that we did in fact file the transcript in state court. It's long and it took a while electronically, but we managed to get it filed. So I think that record is complete. The only other thing I'd go back to is the diversity issue. I don't know how Mr. Havner submits a declaration in support of diversity in federal court after they and to turn around and say, well, we really have been damaged in the value of the injunctive relief is $560,000. When the arbitrator didn't find that to be the case. The key with the arbitration was to stop Makuta from competing and giving away information. The arbitrator specifically said, I'm not going to give damages and no attorney's fees, but you've got to give back their documents and you've got to not give up their information. He's complied with that. The only issue that Mr. Makuta had with the arbitration after the arbitrator found that Reynolds agreement is basically void and unenforceable is that he extended the time off period for a year and a half, which seems to contradict Ohio law, but thank you, your honors very much for your time. Thank you. All right. Thank you very much. And the case is submitted. Thank you.